## In re KROEGER BROS. CO.

## ARTHUR YOUNG & CO. v. GOETZ.

(Circuit Court of Appeals, Seventh Circuit. September 13, 1921.)

No. 2921.

**Bankruptcy ⊚═274—Accountant held not to have agreed to forfeit compensation, if report not completed on time.**

In a bankruptcy proceeding, *held*, that an accountant, on agreeing to make report of conditions before certain date, did not thereby agree to forfeit all rights to compensation if he did not perform within such time.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

In the matter of the Kroeger Bros. Company, bankrupt. Claim by Arthur Young & Co. against Julius J. Goetz, as trustee. From a decree allowing it only part of its claim, claimant appeals. Reversed, with directions.

See, also, 262 Fed. 463.

---

Charles B. Quarles, of Milwaukee, Wis., for appellant.

I. A. Fish, of Milwaukee, Wis., for appellee.

Before BAKER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Appellant is here asking a reversal of an order of the District Court for the Eastern District of Wisconsin, allowing it, for services rendered as an accountant, on its claim against appellee as trustee in bankruptcy of Kroeger Bros. Company, $271, instead of $5,285, claimed.

On September 28, 1918, appellant was employed by a Milwaukee bank to make an examination and report upon the affairs of Kroeger Bros. Company, a large mercantile concern of that city. On October 18th, following, William B. Weller was appointed receiver of Kroeger Bros. Company in the state court, and he continued, under order of that court, in the employment of appellant. On November 18, 1918, Kroeger Bros. Company was adjudged a bankrupt, and Goetz (appellee) was appointed receiver. On December 27, 1918, Goetz was elected trustee, and, so far as appears, he is still acting.

Appellant's claim was for unpaid balance of $780, on a charge figured at $20 per day, for services rendered Weller as receiver, and $4,505 for services rendered appellee as receiver and trustee, figured at $20 per day. The District Court fixed $12 per day as fair, and disallowed all the claim against Weller and all the claim against appellee except $271. Goetz, in his petition filed September 24, 1919, to review the order of the referee filed September 15, 1919, says:

"Under and pursuant to an order of this court, your petitioner did continue the said Arthur Young & Co. in certain examinations of the books of said bankrupt company."

Appellee claims, however, that later he and appellant made an agreement that superseded all other agreements, and that, because appellant failed to perform within the time agreed, it forfeited all rights to compensation. The substance of that agreement, as claimed, is that the work to be done by appellant was limited to four accounts, and that the report was to be delivered by the first adjourned meeting of creditors, which was held January 10, 1919. The time when it is claimed that arrangement was made is uncertain, and seems to be based upon conversations between Marshutz, appellee's attorney, and Fragstein, appellant's representative in charge of the work.

Marshutz fixes one conversation as between November 20th and 30th, in Lecher's office; the next as December 26th, at the Mitchell street store, in the presence of Goetz and Lecher; and again, on December 31st, at which time he says he told Fragstein that the adjourned meeting of creditors would be on January 10, 1919. The date fixed by Goetz of a conversation between Marshutz and Fragstein was December 26, 1918. Fragstein says there was one conversation at Lecher's office, and another about December 26, 1918. Lecher's recollection is that the conversation took place much later than the time fixed by Marshutz.

There is quite as much uncertainty as to what the conversations were, but we will take them, in substance, as stated by Marshutz. He said to Fragstein:

"I want you to direct your attention particularly to the question relative to the absorption of the Kelly-Roth Company by Kroeger Bros. Company, giving us, as far as you can, the amount of tangible assets taken over by Kroeger Bros. Company; * * * also directing your attention to the W. B. Rubin account, as it relates to the loans which he made to either Kelly-Roth Company or Kroeger Bros.; also the status of the American Exchange Bank account, and their dealings with the bankrupt, either Kelly-Roth Company or Kroeger Bros., or both, and the Union Bank account."

Fragstein replied:

"I would say that the matter would be completed within two or three weeks."

And Marshutz said:

"Well, that will be entirely satisfactory."

He fixed the next date as December 26, 1918, and, after some statements, that show confusion as to dates and what was said, testified:

"I previously advised him that the meeting of the creditors was to be the next day, and I was going to get my report, and he said, 'No,' that he * * * could get it out in a very short time."

Marshutz said he told Fragstein he was being pressed for the report, and then fixes the next date as December 31, 1918:

"Told him that the first meeting had been adjourned until January 10th; * * * that the sale had been set for the 8th, and I had been able to bridge over the examination that should have taken place at the first meeting of creditors; * * * that I was not able at that time to give an examination of the officers, because I hadn't had this report."

There was much acrimonious conversation. Marshutz told Fragstein that it was imperative that he should have the report. He says Fragstein told him he could positively have the report in a week or 10 days. Marshutz told Fragstein that appellant had been at work down there 4 months. If that was true, then that conversation must have been as late as January 28, 1919, because the first work done for any one was September 28, 1918.

Appellant had worked for appellee 10 days up to November 30th and had charged therefor $520. Up to December 31st, appellant had worked another 30 days and had made an additional charge therefor of $1,285. Even if either Fragstein or Marshutz had authority to make a contract, there can be no presumption from the record that Fragstein had any authority, or that he intended to hazard a considerable amount already earned on his ability to guess the time of the completion of work under the complicated conditions shown to exist in Kroeger Bros.' affairs. The most that Marshutz claims he said is that if the work was not done they would have difficulty in getting their pay. The books of Kroeger Bros. had not been written up for many months. After long and repeated attempts to write them up, it was found necessary, a week or 10 days before Goetz was appointed, to write a new set. If Fragstein's testimony is true, and it is not disputed on that point,

the business was much tangled up, seemingly purposely so, and the work was delayed at all times by efforts to untangle erroneous entries that were believed to be correct, but were afterwards found otherwise. Fragstein understood that it was important to have the report as soon as possible. Petitioner is a reputable concern, and beyond the fact that Fragstein was not able to make good his promise as to time, there is no evidence that the work was not diligently or intelligently prosecuted. The whole of the month of November, 1918, was consumed in the hearing of a contempt proceeding, for which petitioner furnished much information and numerous papers. Over 5,000 pages of testimony were taken before the court and Fragstein was used as a witness.

We are of opinion that the promises as to time of performance must be taken to have been made subject to those delays and uncertainties that appear to have been produced by the conditions inherent in the affairs of Kroeger Bros. The work was being done under order of court, and if it was desired to terminate the employment, it would have been a simple and logical thing to have cited appellant before the court, and the court doubtless would have placed such limitations upon appellant as the circumstances seemed to justify.

On February 27, 1919, appellee wrote appellant:

"For some time past you have promised the writer that a report of your doings in the matter of Kroeger Bros. Company, bankrupt, would be submitted, but up to now same has not been received, but in place thereof bills are sent to the writer by the company whom you represent covering services which the writer knows nothing about, has not ordered and is not authorized to pay. I must insist that this matter be closed at once, and I trust you will take the necessary steps to that end."

This letter clearly indicates that Goetz was still relying on appellant's promises to get him a report, that he wanted in at once, and that appellant should proceed by the necessary steps to close the matter up and get him the report. He permitted appellant to keep the books until the 17th of March, 1920. The claim that appellee could not induce appellant to return the books does not appeal strongly to the court, because from appellant's own statement appellee was working under order of the court. The books in any event were at all times subject to the order of the court.

We are of opinion that the rate of $12 per day found by the master should not be disturbed, but that appellant should be allowed compensation for 220¼ days at $12 per day, amounting to $2,643, plus cost of typing report, 20 days at $5, $100. The reduction of the rate to $12 per day disposes of the claim against Weller, leaving nothing due thereon.

The decree is reversed, with directions to enter a decree in accordance herewith.